STATE OF NORTH CAROLINA v. HOWARD BROOKS

No. 7416SC96

(Filed 2 January 1975)

1. **Riot and Inciting to Riot § 1— constitutionality of statutes**

   The statutes under which defendant was prosecuted for inciting and engaging in a riot, G.S. 14-288.2, and failing to comply with a lawful command to disperse, G.S. 14-288.5, are constitutionally valid.

2. **Constitutional Law § 20; Courts § 7— appeal to superior court from district court — trial de novo — no transcript of district court proceedings required**

   Defendant was not entitled to have a court reporter take down the proceedings at his trial in district court nor was he entitled to a free transcript of the proceedings, since a defendant convicted in a criminal case in the district court has an absolute right to appeal to the superior court for trial de novo, and in such instance it is as if the case had been brought there originally and there had been no previous trial.

3. **Riot and Inciting to Riot § 2— items found at crime scene — no possession by defendant — admissibility**

   In a prosecution of defendant for inciting a riot, engaging in a riot, and failing to comply with a lawful command to disperse, the trial court did not err in admitting into evidence an iron pipe, a revolver, two shotguns, a machete, and two jugs containing an amber liquid not further identified, which were found at the crime scene, though there was no evidence that defendant owned or had ever personally possessed any of the articles, since the fact that such articles were present and possessed by some persons at the scene was clearly relevant to show the existence of a clear and present danger of injury or damage to persons or property.

4. **Riot and Inciting to Riot § 2— Indian gathering — defendant as leader — sufficiency of evidence of riot**

In a prosecution for inciting a riot, engaging in a riot, and failing to comply with a lawful command to disperse, evidence was sufficient to be submitted to the jury where it tended to show that defendant claimed to be and was recognized by some members of a crowd of Indians as their leader, that defendant urged his followers to assemble at a school, the use of which had been denied the Indians by authorities, that after the crowd assembled at his urging, defendant addressed them and asked them to remain, that defendant kept the crowd across the road from the school knowing that threats voiced by some toward officers posted at the school were growing increasingly violent in nature, that defendant persisted in his endeavors until physical violence finally erupted, and that defendant continued on the scene after the riot began and pursued the same activities which brought the riot into being.

5. **Disorderly Conduct § 2— failure to obey dispersal order — jury instructions prejudicial**

Defendant is entitled to a new trial in a prosecution for failure to comply with a lawful order to disperse where the trial court's charge failed to take into account the 1971 amendment to G.S. 14-288.4 and thereby failed to limit the definition of disorderly conduct to embrace only actions and words likely to bring on an immediate breach of the peace.

APPEAL by defendant from *Bailey, Judge,* 9 July 1973 Session of Superior Court held in ROBESON County.

Defendant was charged by warrants with (1) inciting a riot, (2) engaging in a riot, and (3) failing to comply with a lawful command to disperse, violations respectively of G.S. 14-288.2(d), G.S. 14-288.2(b), and G.S. 14-288.5(b). He was convicted in the District Court and appealed to the Superior Court, where he again pled not guilty to all charges.

The State's evidence tended to show the following events. On the afternoon of 23 March 1973 defendant, who was sometimes referred to by the witnesses as "Chief" Brooks, addressed a gathering in Pembroke of fifty to sixty people, most of whom were Indians. He announced the scheduling of an "organization meeting" for 6:45 p.m. at the Prospect School and reported that the County School Superintendent had indicated that the school would not be available for the meeting because of construction taking place on the premises. Defendant told the gathering he did not think this was a "reasonable or prudent" excuse for not allowing them to use the facility as a meeting place and that he wanted the people of Robeson County to know "that he was willing to die at the steps of the school and that if

there were any riot clad armed law enforcement officers on the school grounds that they were trespassing on Indian property" and he hoped "they know what that means."

The Prospect School is on the south side of a State paved road across from the Prospect Methodist Church, which is on the north side of the road. The paved portion of the road is 20 feet wide and the highway right-of-way extends 30 feet on either side of its center line. Shortly before dark on 23 March 1973 a crowd, composed mostly of Indians, began to assemble on the church grounds. Approximately 40 to 45 law enforcement officers, including Highway Patrolmen, Sheriff's Deputies, and SBI Agents, were stationed on the school grounds under the command of Deputy Sheriff Hubert Stone. By 6:30 p.m. some 75 to 100 people had assembled on the north side of the road across from the school, and this crowd continued to grow during the night, reaching its maximum of from 175 to 200 people sometime between 11:00 p.m. and midnight. Throughout the evening defendant was present, clad in a blanket draped around his shoulders, and from time to time he was seen addressing the crowd from the church steps. The officers could not hear what defendant said, but when he spoke members of the crowd would yell, "Red Power," and "stick their arms up in the air and holler real loud and then he spoke some more."

As the evening progressed the crowd became increasingly noisy and boisterous. A bonfire was built on the church grounds and there was considerable shouting, dancing, and singing of "We Shall Overcome." Traffic on the road was heavy, with much coming and going. Cases of beer were brought, and some members of the crowd were drinking. The crowd began to shout insults and threats towards the officers stationed across the road at times threatening to come across the road and "beat the officers to death." Passing motorists were stopped, and some were dragged from their cars while members of the crowd beat on the hoods, sides, and trunks of the cars. Persons in the crowd began to throw beer and other drink bottles at the officers, and the officers observed that some in the crowd were armed with knives and sticks. From time to time a knot of people would form and start across the road toward the officers. When this happened, defendant would call them back, telling them not to cross the road until he made his decision and that when he made his decision, they were going across to the school grounds. Defendant also announced to the officers across

State v. Brooks

the road that if any of "his people" were injured, he would "declare war on Robeson County." A pistol shot and a shotgun blast were heard, and the verbal insults and threats toward the officers became increasingly belligerent and violent in tone. One patrolman described the situation of the officers as one in which they "could very easily get killed and never know who did it."

Shortly after midnight a bottle was thrown out of the crowd, striking the pavement and splintering glass on the officers. Just then three blasts were fired in quick succession from a shotgun, and the officers heard the pellets falling on their parked vehicles. When this occurred, Deputy Sheriff Stone, after having been advised to do so by other officers present, gave the command to the crowd to disperse. Using a bullhorn, he told the crowd it had five minutes in which to leave. This directive was greeted by an increased flurry of bottle throwing from the crowd. However, approximately twenty-five people did obey the command to disperse and left the area. Others, including defendant Brooks, remained. After waiting six minutes, Deputy Sheriff Stone ordered his officers to cross the road and to arrest those who had refused to comply with his command to disperse. The officers then crossed the road and began arresting persons in the crowd who had refused to leave. In all, forty-eight men, including defendant Brooks, six women, and one boy were arrested. Others in the crowd evaded arrest by fleeing into the darkness.

Defendant did not offer any evidence. He was found guilty on all charges, and from judgments imposing concurrent jail sentences, he appealed.

*Attorney General Morgan by Associate Attorney General Thomas M. Ringer, Jr. for the State.*

*Paul, Keenan & Rowan by James V. Rowan for defendant appellant.*

PARKER, Judge.

Prior to pleading upon trial de novo in Superior Court, defendant moved to quash the warrants as to all three charges on the grounds that the underlying statutes are unconstitutionally vague and overbroad and infringe upon fundamental First Amendment rights. By his first assignment of error defendant now seeks review of the denial of these motions. We find the statutes valid.

The statute involved in the cases in which defendant was charged with inciting and engaging in a riot, G.S. 14-288.2, was enacted as a part of Section 1 of Chap. 869 of the 1969 Session Laws, entitled "An Act to Revise and Clarify the Law Relating to Riots and Civil Disorders." Long before enactment of that statute, participation in a riot had been recognized as a common-law crime in this State, *State v. Moseley*, 251 N.C. 285, 111 S.E. 2d 308 (1959) ; *State v. Hoffman*, 199 N.C. 328, 154 S.E. 314 (1930) ; State Stalcup, 23 N.C. 30 (1840), and the companion common-law crime of inciting a riot has been recognized as a distinct offense. *State v. Cole*, 249 N.C. 733, 107 S.E. 2d 732 (1959), cert. denied, 361 U.S. 867, 4 L.Ed. 2d 107, 80 S.Ct. 128 (1959). As stated in *State v. Moseley, supra,* at 288, 111 S.E. 2d at 311, the common-law offense of riot was "composed of three necessary and constituent elements: (1) unlawful assembly; (2) intent to mutually assist against lawful authority; and (3) acts of violence." The common-law offense of inciting a riot was described in *State v. Cole, supra,* at 741, 107 S.E. 2d at 738, quoting from a Pennsylvania case, as follows:

> "Inciting to riot from the very sense of the language used, means such a course of conduct, by the use of words, signs or language, or any other means by which one can be urged on to action, as would naturally lead, or urge other men to engage in or enter upon conduct which, if completed, would make a riot."

In enacting the 1969 Act, the Legislature expressly declared that the provisions of the statute "are intended to supersede and extend the coverage of the common-law crimes of riot and inciting to riot." G.S. 14-288.3. Comparison of the provisions of G.S. 14-288.2 with the recognized elements of the common-law crimes which it supersedes discloses only a limited extension of the common-law offenses. Under G.S. 14-288.2(d) "[a]ny person who wilfully incites or urges another to engage in a riot, so that as a result of such inciting or urgings a riot occurs or a clear and present danger of a riot is created, is guilty of a misdemeanor. . . . " Under G.S. 14-288.2(b) "[a]ny person who wilfully engages in a riot is guilty of a misdemeanor. . . . " The statute, G.S. 14-288.2(a), defines a riot as follows:

> "A riot is a public disturbance involving an assemblage of three or more persons which by disorderly and violent conduct, or the imminent threat of disorderly and violent conduct, results in injury or damage to persons or property

or creates a clear and present danger of injury or damage to persons or property."

**[1]**  There is nothing constitutionally offensive in this definition. The words employed are not "so slippery and imprecise to the man of common understanding that he would have to guess at their meaning," *Fuller v. Scott,* 328 F. Supp. 842, 850 (1971), and clearly the State transgresses upon no constitutionally protected activity when it makes it an offense to engage in a "riot" defined in terms of "violent" behavior and the "clear and present danger" of resultant harm. Nor does G.S. 14-288.2(d) fail to pass constitutional scrutiny. The advocacy of imminent lawless action is not protected by the First Amendment, *Brandenburg v. Ohio,* 395 U.S. 444, 23 L.Ed. 2d 430, 89 S.Ct. 1827 (1969), and this is the only type of speech any reasonable construction of the statute would seem to cover. We find the statute under which defendant was prosecuted for inciting and engaging in a riot, G.S. 14-288.2, to be constitutionally valid. As to the charge of failing to comply with a lawful command to disperse, this Court has already ruled adversely to defendants present contentions. In *State v. Orange,* 22 N.C. App. 220, 206 S.E. 2d 377 (1974) and *State v. Clark,* 22 N.C. App. 81, 206 S.E. 2d 252 (1974), we upheld judgments imposed for violations of G.S. 14-288.5. In so doing, we considered and rejected the contention that the underlying statutes were unconstitutional. Defendant's first assignment of error is overruled.

**[2]**  When the cases were called for trial in the District Court, defendant's counsel filed a motion that the Court provide, at the expense of the State, a stenographic reporter to take down the proceedings at the trial in that Court and that he be furnished a transcript. In support of this motion, counsel offered to have defendant sign an affidavit to show his indigency. The District Court denied the motion, in so doing making findings that it is not customary to have a stenographic record in the District Court, that the District Court has no statutory authority to provide at the State's expense a stenographic reporter in that Court, that while counsel offered to have the defendant make affidavit of indigency, no such affidavit had been theretofore filed, and the defendant appeared represented by privately employed counsel, that the motion was made after the case was called by the Solicitor for trial, that there is a scarcity of court reporters, and that to provide a reporter would delay the trial

which was already scheduled for its third trial date. The Court did permit defendant to submit his affidavit of indigency for the record, but no finding as to indigency was made by the Court. At the call of the cases for trial de novo in the Superior Court and prior to pleading in that Court, the defendant, still represented by the same privately employed counsel, moved in the alternative for remand of the cases for a new trial in the District Court with a transcript to be provided to defendant, arrest of the District Court judgments, or for dismissal of the charges because of denial of his motion in the District Court to have a transcript of the trial in that Court made at the State's expense. The denial of this motion in the Superior Court is the subject of defendant's second assignment of error on this appeal.

Customarily, no court reporter is available and no transcript is made of criminal trial proceedings in our District Courts nor is such a transcript necessary to protect adequately the rights of a criminal defendant. This is so because when a defendant in a criminal case is convicted in the District Court, he has an absolute right to appeal to the Superior Court for trial de novo. G.S. 7A-290. In such event the trial in the Superior Court is in all respects de novo, and, "in contemplation of law it is as if the case had been brought there originally and there had been no previous trial." *State v. Sparrow,* 276 N.C. 499, 507, 173 S.E. 2d 897, 902 (1970). Thus, a transcript of the criminal trial proceedings in the District Court, where the case is heard by the Judge without a jury, is of no substantial value to an effective appeal to the Superior Court, where the trial is completely de novo before Judge and a jury. It should be noted, also, that in this respect our practice treats the poor man in exactly the same manner as it treats the rich. Customarily no transcript of District Court criminal proceedings is available to either. Finally, we note that defendant in this case has alleged no special circumstances suggesting the need for a District Court transcript for a just determination of his cases, defendant, at all stages of the proceedings, simply asserting his abstract right thereto. We hold, therefore, that even if defendant had been adjudicated an indigent prior to his trial in the District Court, and even had his motion for a free transcript been timely made in that Court, there was no error in denying his motion. Defendant's second assignment of error is overruled.

[3]   Defendant contends that certain weapons and containers found by the officers at the scene were improperly admitted into evidence over his objections. These articles, an iron pipe, a revolver, two shotguns, a machete, and two jugs containing an amber liquid not further identified, were found by the officers in a search of the area after the arrests were made. Although there was no evidence that defendant owned or had ever personally possessed any of these articles, the fact that such articles were present and possessed by some persons at the scene under the circumstances disclosed by the evidence was clearly relevant to show the existence of a "clear and present danger of injury or damage to persons or property." There was no error in admitting these articles into evidence.

[4]   Defendant's motions for nonsuit in all three cases were properly overruled. There was ample evidence that a riot as defined in G.S. 14-288.2 (a) occurred. When viewed in the light most favorable to the State, the evidence would support a jury finding that defendant both incited the riot before it occurred and thereafter participated in it. There was evidence that defendant claimed to be and was recognized by some in the crowd as their leader. There was also evidence from which the jury could reasonably find that defendant, knowing that use of the school premises had been denied by the school authorities, anticipating the presence on the school grounds of "riot clad armed law enforcement officers," and apparently willing to press his demands for use of the school property to the point of a violent confrontation with the authorities, urged his followers to assemble for that unlawful purpose; that after the crowd assembled at his urging, he continued to address them and to urge that they remain; that he did this knowing that threats voiced by members of the crowd toward the officers were growing increasingly violent in nature; and that defendant persisted in these endeavors until physical violence finally erupted. Upon such findings the jury could find that defendant willfully incited or urged others to engage in a riot and as a result of such inciting or urging a riot finally occurred.

There was also evidence that after the riot erupted, defendant remained at the scene and continued in the same activities which brought the riot into being. It is true, of course, that evidence of mere presence at the scene of a riot may not alone be sufficient to show participation in it. The evidence here shows much more than defendant's mere presence after the riot

occurred. As above noted, it shows that he claimed to be and was apparently recognized as the leader of those assembled at the scene. They cheered when he spoke and on occasion appeared to obey his commands. That at times he appeared to restrain them from advancing all the way upon the officers, was for the jury to evaluate. Certain it is that defendant can justly claim no credit for the fact that the affair ended without bloodshed. Credit for that must be given to the law enforcement officers, who acted with admirable coolness and restraint throughout.

It is also manifest that there was ample evidence to support the jury's finding that defendant was guilty of the charge of failing to comply with a lawful command to disperse. Defendant's assignment of error directed to denial of his motions for nonsuit is overruled.

Defendant assigns error to denial of his motions for mistrial made on the grounds of what he asserts were various acts of prosecutorial misconduct on the part of the State's attorney. We have carefully reviewed the record and, without expressing approval of the actions complained of, find that they were not such, either singly or cumulatively, as to result in denying defendant a fair trial. The trial court did not abuse its discretion in denying the motions for mistrial.

[5] Finally, defendant assigns error to portions of the court's instructions to the jury. We find it necessary to discuss only one of these. In connection with the case in which defendant was accused of failing to comply with a lawful order to disperse, the able trial judge inadvertently failed to note the 1971 amendment to G.S. 14-288.4 and in so doing charged concerning disorderly conduct in the language of G.S. 14-288.4(1) and (2) as those sections were originally enacted in 1969. As a result, the court's charge failed to limit the definition of disorderly conduct to embrace only actions and words likely to bring on an immediate breach of the peace, as would be required by the 1971 amendment. *See State v. Summrell,* 282 N.C. 157, 192 S.E. 2d 569 (1972). For this error in the charge, defendant is entitled to a new trial in the case charging him with failing to comply with a lawful order to disperse. We have carefully considered defendant's remaining assignments of error, and find no prejudicial error such as to warrant granting a new trial in the other two cases.

Trust Co. v. Barnes

The result is:

In defendant's trial and in the judgments imposed on the charges of inciting a riot (Warrant No. 3893, second count) and engaging in a riot (Warrant No. 4822, first count) we find

No error.

In the case in which defendant is charged with failing to comply with a lawful order to disperse (Warrant No. 4822, second count) defendant is entitled to a

New trial.

Judges BRITT and VAUGHN concur.